FILED
JAN 1 1 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Clifton Flowers )  CASE NO. 04 CR700 JJBJ
    Petitioner, )
                           )  PRISON NO. 17212-424
                           )
           v. )
                           )  08CV265
United States of America )  JUDGE ZAGEL
    Defendant, )  MAGISTRATE JUDGE DENLOW

MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE PURSUANT TO TITLE 28 U.S.C.A. § 2255

NOW COMES Clifton Flowers, the petitioner (hereinafter the "petitioner") files this motion pursuant to the Fifth and Sixth Amendment to the United States Constitution and pursuant to Title 28 U.S.C.A. § 2255 and hereof states the following:

(1) HISTORY OF THE CASE:

The petitioner submits that the facts of this case are outlined in the attached petition For Commutation of Sentence Form. See attached form.

(II) ARGUMENTS:

The petitioner submits to this Honorable Court that Title 28 U.S.C.A. § 2255 requires a prisoner's sentencing court to release him or her if the prisoner's sentence was imposed in violation of the Constitution or Law of the United States, if the court was without jurisdiction to impose the sentence, if the sentence is otherwise subject to collateral attack. The statute provides that if the court finds for the prisoner, it may resentence him or her

or set the conviction aside, as is appropriate.

(III) <u>The Petitioner Was Denied Effective Assistance of Counsel</u>:

The petitioner further submits to this Honorable Court that Attorney <u>James M. Lydon</u>, rendered ineffective assistance of counsel for the petitioner at the sentencing phase of the judicial proceeding, in the above criminal numbered case, thereby depriving him of effective assistance of counsel guaranteed by the Sixth Amendment. The Sixth Amendment of the United States Constitution provides that in criminal prosecutions, the accused shall have the right to the assistance of counsel for his or her defense. The United States Supreme Court has held that this right includes the right to effective assistance of counsel. <u>Mc Mann v. Richardson</u> 397 U.S. 759, 771 n. 14, 90 S. Ct. 441, 25 L.Ed.2d 763 (1970). Pursuant to this Constitutional mandate, a defendant is entitled to reasonable competent assistance of counsel from pre-plea investigation and pre-paration through advocacy at sentencing.

The United States Supreme Court has held that in order for a prisoner to show that counsel's assistance was so ineffective at the sentencing stage to warrant vacating or correcting a sentence under 28 U.S.C.A. § 2255, the petitioner must show: (1) that his counsel's acts or ommissions made counsel's overall performance fall below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's deficiencies the result of the proceeding would have been different "to a reasonable probability."

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of a criminal proceeding]."

Strickland v. Washington, 466 U.S. at 694. See Miller v. Martin, 481 F.3d 468,470 (7th. Cir. 2007), counsel was ineffective for failure to participate in the sentencing hearing. See also U.S. V. Theodore, 468 F.3d 52, 56 (1st. 2006), citing Bell v. Cone, 535 U.S. 685, 696-97, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), wherecounsel's ineffectiveness was so egregious that the defendant was in effect denied any meaningful assistance at all. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

Therefore, to satisfy the first prong of Strickland supra, the petitioner submits to this Honorable Court that Attorney James M. Lydon was fully aware of the fact that the petitioner was a deportable alien and that based on his status as deportable alien, the petitioner was entitled to seek a downward departure from the Sentencing Guidelines range, under the FAST TRACK program.

Under the second prong, the petitioner must show a reasonable probability that, "armed with the correct information, the outcome would have been different." For defendants eligible for FAST-TRACK disposition and charged with illegal entry after deportation in violation of Title 8, United States Code, Section 1326. The defendant enters a pleas of guilty to violating Title 8, United States Code, Section 1326. The government recommend a one level reduction in offense level pursuant to § 5K1.1 for an early plea and a **two-level** reduction in total offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

The FAST TRACK program has been institutionalized for quite some time. The practices of the participating districts have been completely delineated and represent a body of law distinct from the

regular Guidelines. Competent counsel is expected to know the law and the Guidelines. Defense counsel should have known and invoked the "FAST TRACK" issue where it has been reported in literature that is generally required reading for competency of criminal representation. Therefore, a defense attorney who outright fails to ask the court to at least consider exercising its sentencing discretion has committed ineffective assistnce of counsel.

Counsel for petitioner, cannot be excused from raising this departure ground by any circuit precedent. The concept of **FAST TRACK** arose first as a form of plea bargaining and was endorsed at that level. Since that time, however, the practice has become wholesale and rejects the excessiveness of Guidelines sentencing for plain crimes of illegal reentry. The divisional districts have awarded the **FAST TRACK** program to multiple illegal reentry defendants, which petitioner is well aware.

Petitioner's counsel "entirely fails to subject the prosecution's case at the sentencing phase to meaningful adversarial testing," Strickland i.d at 692, 104 S.Ct. 2052.

### WHY PETITIONER SHOULD BE GIVEN A LENIENT SENTENCE TO AVOID AN UNWARRANTED SENTENCING DISPARITY THAT WOULD OTHERWISE OCCUR BECAUSE OF FAST-TRACK PROGRAMS ELSEWHERE

Unwarranted sentencing disparities occur under the Guidelines for defendants subject to prosecution pursuant to 18 U.S.C. § 1326 because some judicial districts use "FAST-TRACK programs." See U.S. v. Galvez-Barrios, 2005 WL 323703, at *5 (E.D. Wis., Feb. 2, 2005). The Sentencing Commission has promulgated that

almost half the defendants convicted of reentry by an aggravated felon were prosecuted in the Districts of Arizona, Southern California and Western Texas. 14 Fed.Sent.R. 260, 2002 WL 31304861, at *4. See also U.S. Sentencing Comm'n Report to Congress: Downward Departures from the Federal Sentencing Guidelines, 63-64 (Oct. 2003). Under the FAST-TRACK agreements used for more than half the illegal reentry cases in those three districts, "offenders meeting the offense conduct criteria of 8 U.S.C. § 1326 (b)(2) and its 240-months statutory maximum are instead charged with and permitted to plead guilty to a different subsection of this statute (8 U.S.C. §1326 (a)) that has a punishment provision limited to 'not more than 2 years." Maxfield, supra at *6. The Maxfield/Burchfield study found that in the fiscal year 1997 twelve of seventy district convicting such offenders used this statutory trump policy, id., at *8, and since then, the number of districts using the statutory trump seems tohave expanded. See Sentencing Comm'n, supra at 65 (most FAST TRACK programs rely upon accepting pleas to lesser charges). Based on data from fiscal year 2000, an update of the Maxfield/Burchfield study found the followin:

> Without the trump, the median district sentences are roughly between 4 and 6 years, ranging from a median of 51 months to a median of 77 months. However,...when the statutory trump charging and plea practice is used, the median prison sentence for all district is 24 months.

The evil of FAST TRACK programs is that they "create serious sentencing disparities. Because they operate only in certain districts (typically in southwestern states), an illegal alien stopped in California or Arizona will receive a lighter sentence than an alien convicted of the same offense and with the same record who is found [,for example,] in Wisconsin." Galvez-Barrios, supra at 9; see also

Erin Middleton, Fast-Track to Disparity: How Federal Sentencing Policies Along the Southwest Border Are Undermining the Sentencing Guidelines and Violating Equal Protection, 2004 Utah L. Rev. 827, 828 ("By creating a situation where the severity of the sentence depends only upon place of arrest, the FAST-TRACK program promotes disparity in sentencing."). Even a report of the Sentencing Commission sounds the alarm:

> Defendants sentenced in districts without authorized early-disposition programs... can [expect] to receive longer sentences than similarly-situated defendants in district with such programs. This type of geographical disparity appears to be at odds with the overall Sentencing Reform Act goal of reducing unwarranted sentencing disparity among similarly-situated offenders.

Sentencing Comm'n, Report to Congress, at 66-67. As one district court judge wrote, "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested. U.S. v. Bonnett-Grullon, 53 F. Supp. 2d 430, 435 (S.D.N.Y. 1999), aff'd, 212 F.3d 692 (2d Cir.), cert. denied, 531 U.S. 911 (2000). Several courts have now held that such disparities are unwarranted. E.g., U.S. V. Delgado, No. 6:05-CR-30-Orl-31 KRS, Slip Opinion, at 3-4 (MD. Fla. June 7 2005); U.S. v. Ramirez-Ramirez, 365 F.Supp.2d 728, 731-32 (E.D. Va. 2005); U.S. v. Galvez-Barrios, 355 F.Supp.2d 958, 960 (E.D. Wes. 2005).

Fast-Track programs are scattered around the country with no apparent reason. While first surfacing in southwest border districts to expedite immigration cases, such programs now also exists in such districts as Idaho, Nebraska, North Dakota, and Western Washington. Those districts are hardly staggering under an infulx of border

crossings, and they are faced with far fewer illegal reentry cases than the Northern District of Illinois.

In the present case, Mr. Flowers promptly pled guilty, thus providing the government and the judicial system with the very benefit reaped when a defendant promptly pleads guilty in a FAST-TRACK program. See Sentencing Comm'n supra at 15 (the premise of FAST-TRACK programs "is that defendants who promptly agree to participate... save the government significant scarce resources that can be used in prosecuting other defendants and demonstrate acceptance of responsibility above and beyond what is taken into account under §3E1.1 (Acceptance of Responsibility)."); id., at 65 (same). Mr. Flowers is precisely the type of defendant targeted by FAST-TRACK programs, as clear from a district-by-district summary of such programs in illegal reentry cases. It would be arbitrary, capricious and unreasonable for Mr. Flowers to suffer a more severe sentence than other similarly-situated defendants because of the accident of where he has been prosecuted.

The court should sentence Mr. Flowers in the same way as defendants benefitting from FAST-TRACK programs. Such programs have typically relied on the statutory 'trump' of two years, pursuant to 8 U.S.C. §1326 (a). See Sentencing Comm'n, supra at 65 ("[T]he majority of FAST-TRACK programs do not employ agreed-upon or Government-requested downward departures, but instead rely upon accepting pleas to lesser charges")(internal quotation marks and footnote omitted). According to the government's district-by-district summary, in five districts (Central, Northern and Southern Districts of California, Oregon and Western District of Washington) Mr. Flowers

7.

would receive a sentence of 30 months.

An alternative approach provides up to a four-level reduction envisioned in Guideline §5K3.1. In Mr. Flowers case, with a Criminal History Category VI, in three districts (Arizona [Phoenix/Yuma Divisions], Eastern District of California, and North Dakota) this yields a total offense level of 17 and an imprisonment range of 51-63 months; in one district (Arizona [Tucson Division] a total offense level of 18 and an imprisonment range of 57-71 months.

If sentenced to the low end of the Guideline range Mr. Flowers would, with a lone exception, receive a sentence in the low 50 months range.

## CONCLUSION

For the foregoing reasons, petitioner requests that the court vacate his original sentence and resentence him and then impose a sentence substantially below the Guideline range.

Sincerely,

Clifton Flowers (pro-se)
17212-424
Reeves County Detention Center III
P.O. Box 2038
Pecos, Tx  79772

PROOF OF SERVICE

I certify that on January 3, 2008, I mailed a copy of the enclosed attachments via first class mail to the following parties at the address listed below:

Julie B. Ruder
Assistant United States Attorney
for the Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604

PROOF OF SERVICE FOR INSTITUTIONALIZED
OR INCARCERATED LITIGANTS

I certify that this document was given to prison officials on January 3, 2008 for forwarding to the Court
I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. 1746.

_____            Jan. 3 2008_____
     (Signature)                          (Date)